Joyce, Appellant, *v.* Quinn.

Argued November 10, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Frank J. Kernan,* with him *P. J. McArdle,* for appellant.

*Kim Darragh,* with him *Meyer, Darragh, Buckler, Bebenek & Eck,* for appellee.

Opinion by Montgomery, J., December 17, 1964:

This is an appeal from the order of the Court of Common Pleas of Allegheny County denying plaintiff-appellant's motion for a new trial in an action of trespass which arose as a result of personal injuries received in an automobile accident which occurred on July 9, 1958, on Duncan Avenue in Hampton Township, Allegheny County. At the time of the accident appellant, a licensed driver, was seated in the front seat of an automobile owned and operated by Robert Quinn, 42 years of age, who was operating on a learner's permit. Prior to the trial Robert Quinn died of causes unrelated to the instant accident.

The appellant contends that the lower court erred, first, by instructing the jury on assumption of risk; and, second, by permitting defendant-appellee to question plaintiff-appellant about bringing a lawsuit to recover damages for injuries that he received in another accident.

Appellant's description of the accident briefly was as follows, viz.:

"A. I noticed a car coming toward us and he seemed to be taking more than his share of the highway. Q. How much more of his share was he taking than he should have been taking? A. About a foot. Q. He would be about a foot over the center? A. Yes, something like that. Q. When you saw that, what did you do? A. I told Mr. Quinn to pull over on the berm as this fellow didn't seem to want to give us much of the highway. Q. What did Mr. Quinn do? A. He did that, pulled over and slowed down, as I told him to, asked him to. Q. He pulled over on the berm and slowed down, and how much did he slow down? A. To about 10 miles an hour. Q. Now, was there any collision between Mr. Quinn's car and this other car? A. No, sir. Q. Did the other car get by all right? A. Yes. Q. What happened after the other car got by? A. Well,

Mr. Quinn continued along the berm for about 75 or 100 feet, and I asked him to stop a couple of times, two or three times, and he just didn't, and he pulled right out onto the asphalt, the highway again, and he began to accelerate, accelerate his car, and he continued on across the tracks and shot straight at an angle for that bridge rail and went through."

It is the contention of the appellant that the doctrine of assumption of risk has no application under the evidence in this case and it is conceded by the appellee that the only contributory negligence that could possibly be charged to appellant was his assumption of the risk involved in riding with a driver operating on a learner's permit. There is no evidence of the driver's incompetence to drive an automobile prior to the accident other than that he was operating on a learner's permit, which compelled the presence of a licensed driver in the automobile with him. On the contrary, all of the other evidence as to Quinn's ability to drive prior to the accident points to his competency. He had been driving for five weeks on a learner's permit, with appellant and others riding with him and teaching him. He was doing very well and had driven in traffic eight or ten times. On the evening of the accident he had driven from Pittsburgh during the hour preceding the accident. The accident occurred by reason of what may have been an emergency created by a third person. Recognizing that fact, the court instructed the jury as to the law on emergencies; and the jury very well could have exonerated him from any negligence under the circumstances.

The results attained in our sister states in this type of case vary. Some states hold that one who is licensed to operate a motor vehicle and who voluntarily accompanies a driver who has just received a learner's permit for the purpose of teaching him to drive assumes the risk of the learner's inexperience and may

not recover damages for personal injuries caused by the lack of skill or inexperience of the learner; some states follow the rule that a licensed operator who accompanies a person driving under an instruction permit to enable the latter to comply with statutory requirements does not, as a matter of law, assume the risk of the permittee's negligence but that the question of assumption of risk is for the jury; and other states hold that a guest who knows, or should know, of the driver's inexperience or lack of proficiency may be guilty of contributory negligence such as will preclude his recovery if his conduct in voluntarily riding with the driver amounts to a failure to exercise reasonable or ordinary care for his own safety. 8 Am. Jur. 2d, Automobiles and Highway Traffic §539, and cases cited therein.

The rule followed in Pennsylvania is expressed in the following cases. In *Lloyd v. Noakes,* 96 Pa. Superior Ct. 164 (1929), the action was brought by a guest against a driver who was operating on a learner's permit. The guest was a licensed driver but did not make the trip for the purpose of instructing the driver. The plaintiff-guest contended that the driver, though not a licensed driver, was, nevertheless, competent, or in any event, his incompetence was not so obvious as to make one riding with him guilty of contributory negligence in merely becoming his guest, as contended by the driver. It was held therein that the evidence of defendant's competence to drive and whether he drove negligently was for the jury. And this Court said, at page 168, "If a guest, knowing the driver to be incompetent and not qualified to drive, is injured by a driver's negligence, contributory negligence may be declared as a matter of law. But if the guest neither knew nor should have known of the driver's incompetence, if his ability to drive appears sufficient to induce a reasonably prudent man to consider him com-

petent, the court cannot declare the guest to be guilty of contributory negligence in riding with him. If the facts are in dispute, the evidence should be submitted to the jury to find them with proper instructions." It is noted that we said nothing in that case about assumption of risk. The issues were competency and negligence.

*Barker v. Reedy,* 167 Pa. Superior Ct. 222, 74 A. 2d 533 (1950), also involved a driver who was operating on a learner's permit but who previously had been the holder of a license which had been permitted to lapse. Plaintiff-guest's contributory negligence in riding with an unlicensed driver also was asserted; and again we held the issue of the driver's competency to be for the jury. No mention was made of assumption of risk.

In *Chamberlain v. Riddle,* 155 Pa. Superior Ct. 507, 38 A. 2d 521 (1944), we had held that the absence of an operator's license was not conclusive evidence of incompetency.

Generally assumption of risk and contributory negligence are considered as separate and distinct defenses; but when attempts have been made to formulate distinctions between the two concepts great confusion has resulted. 82 A.L.R. 2d 1218, 1226, §3. This Court, speaking through its then President Judge BALDRIGE, also recognized a distinction in *Elliott v. Philadelphia Transportation Co.,* 160 Pa. Superior Ct. 291, 294-295, 50 A. 2d 537, 539 (1947) : "According to text writers the term voluntary assumption of risk is confusing as it is used in a dual sense. First, as synonymous with the term contributory negligence, which implies negligence upon the part of both plaintiff and defendant, and second, where there is no question of defendant's negligence, but where the risk is voluntarily assumed in the course of a master and servant, or some other voluntary, relationship such as landowner and licensee,

guest and passenger, etc.: Harper on Torts (1933), 289, 296, §§130, 131; Bohlen, Voluntary Assumption of Risk (1906), 20 Harvard Law Review 14."

It is only the first meaning that concerns us in this case since the establishment of negligence on the part of Quinn was the basis of appellant's claim. If he were not negligent, the suit would fail for that reason. Therefore, the instructions given by Judge VAN DER VOORT were based on a proper concept of the term.

Appellant's counsel objected to the instruction on assumption of risk as follows:

"I don't think in this case that the plaintiff assumes the risk of the defendant's negligence at all. I think any charge on assumption of risk is erroneous. I think that the plaintiff was right under the law to expect the defendant to operate as a reasonably prudent person, considering his experience, and that he didn't assume any risk of any negligence in any degree at all."

The instruction on the doctrine of assumption of risk was as follows:

"In connection with the matter of contributory negligence, it is the defense's claim that Patrick Joyce was contributorily negligent in this matter. First, that he assumed the risk involved in getting in the car with Robert Quinn, and, secondly, that if Robert Quinn was negligent, Robert Quinn's negligence is imputed to the plaintiff, Patrick Joyce, because Patrick Joyce had the duty to oversee, so to speak, the driving of the automobile by Mr. Quinn who had only a learner's permit. [Negligence by imputation was ruled out later in the charge, with no objection by either counsel.]

"I will take up with you first the law relating to the assumption of risk. It is true that the assumption of a risk is contributory negligence where that assumption of a risk in some degree contributes to the production of the injury. You, of course, can't assume a risk

unless you know what the risk is. You should therefore consider when you deliberate upon this case and when you are deliberating upon the matter of contributory negligence, if there is any, you should consider whether Patrick Joyce knew what risk he was assuming, and you should, of course, consider the fact that Patrick Joyce had on several occasions been in the car with Robert Quinn; if I recall the testimony correctly, I think he helped instruct him in the early part of his driving. Patrick Joyce didn't do all the instructing, but did part of it.

"If Patrick Joyce did know the risk which he was assuming in driving along with Robert Quinn, did this assumption of the risk contribute to any degree to the production of the injury to Patrick Joyce? The Motor Vehicle Code requires that a learner may operate an automobile, that is, a person having a learner's permit may operate an automobile if he is accompanied by a licensed operator who is actually occupying the seat beside the holder of the learner's permit. In other words, in this car the Motor Vehicle Code requires that a person with a learner's permit may operate it so long as a licensed motor vehicle operator is sitting up in the front seat with him."

As we have previously stated, the instructions on assumption of risk were based on a proper concept of that term, as being synonymous with contributory negligence. We have also found in this case that the only evidence on which a finding of contributory negligence could be based is that the driver was unlicensed and that he may have been inexperienced. Therefore, although no objection was made by the appellant to an instruction on contributory negligence, we are constrained to conclude that such charge in the particular circumstances of this case was improper. Although a court may remove the question of contributory negligence from the jury only if no reasonably intelligent

man would accept such evidence as sufficient to establish the existence of negligence; *Repyneck v. Tarantino,* 415 Pa. 92, 202 A. 2d 105 (1964), where there is no evidence in the record to justify a jury in inferring that plaintiff was guilty of contributory negligence, it is the duty of the court to give binding instructions that as a matter of law no such question exists in the case. *Thomas v. Tomay,* 413 Pa. 270, 196 A. 2d 740 (1964). However, we do not rule out the possibility that on the new trial in this case, or in a similar case, facts may appear, along with the evidence of inexperience and the defendant's driving with only a learner's permit, on which an inference of contributory negligence may be based. In such instance, the jury should be instructed that the absence of a driver's license and the presence of a learner's permit is not conclusive evidence of incompetency but may be considered with other evidence of incompetency in determining that fact; and, furthermore, if the guest knew of the driver's incompetence or should have known of it, or if his inability to drive sufficiently appeared so that it would induce a reasonably prudent man to consider him incompetent, then the jury may find that the plaintiff was contributorily negligent. Since the instructions in this case did not conform to these principles, we conclude that it was so prejudicial to the appellant as to require a new trial, at which we would discourage the use of the term assumption of risk to avoid the confusion hereinbefore mentioned.

Since a new trial is mandatory in view of our foregoing conclusion, we shall refrain from passing on the second assignment of error.

Order reversed and a new trial awarded.

WRIGHT, J., would affirm on the opinion of Honorable ROBERT VAN DER VOORT for the court below.