538 A.2d 509

Roosevelt J. MALINDER and Harriet Malinder

v.

JENKINS ELEVATOR & MACHINE COMPANY and Utica
Insurance Company & Allied Enterprises.

Appeal of UTICA INSURANCE COMPANY.

Superior Court of Pennsylvania.

Argued June 8, 1987.

Filed Jan. 27, 1988.

Petition for Modification of Judgment
Denied March 8, 1988.

Charles W. Craven, Philadelphia, for appellant.

Francis J. Moran, Philadelphia, for Malinder, appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, WIEAND, McEWEN, OLSZEWSKI, BECK, TAMILIA and JOHNSON, JJ.

ROWLEY, Judge:

This is an appeal from a judgment entered in favor of appellees, Roosevelt and Harriet Malinder, and against Utica Insurance Company, (Utica) and Allied Enterprises (Allied); and in favor of Utica and against Allied on Utica's cross-claim. We reverse the judgment in favor of the Malinders and remand for the entry of judgment n.o.v. in favor of Utica.

On September 9, 1982, appellee Roosevelt Malinder was struck in the head by a freight elevator at his place of employment. There is no factual dispute as to the condition of the premises when the incident occurred or as to the events which transpired. A typical and safe method of summoning the freight elevator in this case was to use the building's intercom system. On the day of his injury, despite the fact that the intercom system was working, Malinder called for the elevator from the landing door by tilting his head through the space created by a missing glass panel in the landing door and yelling to the elevator operator. When Malinder tilted his head through the opening, he was struck by the elevator.

Malinder filed suit against various defendants, including Utica Insurance Company and Allied Enterprises. Utica was the insurer of Malinder's employer, and under Pennsylvania law it was required to inspect the elevator twice a year. Utica retained Allied to conduct these inspections. Both Utica and Allied filed cross-claims against each other seeking indemnity. Prior to trial, it was agreed that the issue of indemnity would not be submitted to the jury but would be resolved by the judge after trial.

At trial, Malinder testified that he did not believe it was dangerous for him to tilt his head through the opening because he assumed there was a three to four inch clearance from the elevator floor. However, he also testified that he knew he would be struck if the elevator was coming. Evidence was also introduced at trial that several months prior to the accident involved here, when the eleva-

tor had last been inspected, the glass pane had been missing but had not been reported on the elevator inspection report.

The trial court refused to charge the jury on the defense of assumption of risk but instead charged it on comparative negligence. The jury returned a verdict against Allied and Utica for $55,000, but also found that Malinder was 30% contributorily negligent. Accordingly, the award was reduced to $38,500. Post-trial motions were denied and the court granted Utica indemnity from Allied as a matter of law. Both Utica and Allied appealed from the judgment entered against them, and their appeals were consolidated.

By an unpublished decision, a panel of this court affirmed the trial court's decision. Utica filed a petition for reargument before the court en banc, but Allied failed to do so. Therefore, the Court made an Order granting the petition for reargument as to Utica only and directing that it would not entertain reargument on the indemnification issue raised by Allied. In the present procedural posture, only the appeal of Utica is before us.

Utica argues that the trial court erred when it refused to grant Utica a directed verdict on the basis that Malinder assumed the risk as a matter of law because the risk was both obvious and understood by Malinder, and because Utica breached no duty to Malinder. Alternatively, Utica argues that the trial court erred in refusing to instruct the jury on assumption of the risk doctrine. We hold that Malinder assumed the risk of his injuries as a matter of law, and therefore reverse the judgment and remand for entry of a judgment n.o.v.

At issue in this case are the questions of whether the doctrine of assumption of the risk is a viable defense under the unique factual circumstances presented in this case especially in light of the Comparative Negligence Act, 42 Pa.C.S. § 7102, and, if it is still a viable defense, whether the doctrine of assumption of the risk must be applied to these facts as a matter of law because there is no factual dispute for a jury to resolve. Although the facts of this case are unique, they are substantially similar to those in a

case decided by the Pennsylvania Supreme Court, *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983). In that case, the Supreme Court addressed these same concerns, and therefore we will follow its decision here.

The basic premise of the doctrine of assumption of the risk is that a party who voluntarily and knowingly assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover damages for such harm. *Restatement (Second) of Torts*, § 496 A (1965). However, as stated by at least one commentator, "[assumption of the risk] has been a subject of much controversy, and has been surrounded by much confusion, because 'assumption of the risk' has been used by the courts in several different senses, which traditionally have been lumped together under the one name, often without realizing that any differences exist." *Prosser and Keeton on Torts*, 5th Edition, § 68 (Footnotes omitted).

The authors of the *Restatement (Second) of Torts* § 496 A, comment c (1965) divide assumption of the risk into four categories. Comment c to § 496 A provides as follows:

*c. Meanings of assumption of risk.*
"Assumption of risk" is a term which has been surrounded by much confusion, because it has been used by the courts in at least four different senses, and the distinctions seldom have been made clear. These meanings are as follows:

1. In its simplest form, assumption of risk means that the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk. The result is that the defendant, who would otherwise be under a duty to exercise such care, is relieved of that responsibility, and is no longer under any duty to protect the plaintiff....

2. A second, and closely related, meaning is that the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so

is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances. Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is relieved of his duty to the plaintiff....

3. In a third type of situation the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it. For example, an independent contractor who finds that he has been furnished by his employer with a machine which is in a dangerous condition, and that the employer, after notice, has failed to repair it or to substitute another, may continue to work with the machine. He may not be negligent in doing so, since his decision may be an entirely reasonable one, because the risk is relatively slight in comparison with the utility of his own conduct; and he may even act with unusual caution because he is aware of the danger. The same policy of the common law which denies recovery to one who expressly consents to accept a risk will, however, prevent his recovery in such a case....

4. To be distinguished from these three situations is the fourth, in which the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory negligence. There is thus negligence on the part of both plaintiff and defendant; and the plaintiff is barred from recovery, not only by his implied consent to accept the risk, but also by the policy of the law which refuses to allow him to impose upon the defendant a loss for which his own negligence was in part responsible. (See § 467.)

In the first three of these categories, as a result of the plaintiff's conduct, there is no duty owed by the defendant, to the plaintiff. Consequently, the application of the defense in those cases constitutes a complete bar to the plaintiff's recovery. In the fourth category, however, there

are two negligent acts: the defendant's and the plaintiff's, and the defendant's "duty" to the plaintiff is not dissolved. Thus, the *Restatement's* four categories could be reclassified into only two categories of assumption of the risk: 1) those in which the plaintiff's conduct relieves the defendant of any duty; and 2) those in which both the plaintiff and the defendant have a duty and each breaches his or her respective obligation.

The Restatement's four categories are not the only ones often used to distinguish different types of assumption of the risk. Assumption of the risk has also been divided into different categories by other authorities. For example, in *Assumption of Risk in Products Liability Cases*, Keeton, 1961, 22 La.L.Rev. 122, assumption of the risk is divided into six different types: express, subjectively consensual, objectively consensual, by consent to conduct or condition, associational, and imposed. In *Prosser and Keeton on Torts*, 5th Edition, § 68, assumption of the risk is divided into only three categories: express consent perspective, duty perspective, and misconduct defense perspective. Assumption of the risk has also been analyzed by some courts as consisting of only two types: primary and secondary. See, e.g. *Springrose v. Willmore*, 292 Minn. 23, 192 N.W.2d 826 (1971); *Wilson v. Gordon*, 354 A.2d 398 (Me., 1976). See also: *Smollett v. Skayting Development Corp.*, 793 F.2d 547 (3rd Cir.1986). "Primary" assumption of the risk involves those situations in which there is no duty owed by the defendant to the plaintiff to protect from a risk of harm. The Restatement's first three categories, in which the defendant owes no duty to the plaintiff because of the plaintiff's conduct, would constitute "primary" assumption of the risk. "Secondary" assumption of the risk is similar to the fourth Restatement category in which the defendant owes a duty to the plaintiff, but the plaintiff's voluntary encountering of the risk is unreasonable and therefore the plaintiff too has been contributorily negligent. These different approaches to explaining assumption of the risk demonstrate that there are many different concepts which

have been utilized by courts and scholars to analyze the doctrine of assumption of the risk.

Although the doctrine of assumption of the risk is available as a defense in Pennsylvania, a majority of the Pennsylvania Supreme Court has not yet adopted the Restatement's four-part analysis, the Keeton six-part analysis, the Prosser and Keeton three-part analysis or the two-part analysis utilized by some courts to analyze those cases in which the doctrine is applicable. In *Rutter v. Northeastern Beaver County School District*, 496 Pa. 590, 437 A.2d 1198 (1981), three justices of the Supreme Court discussed the Restatement's analysis and applied it to the particular facts of the case. However, the opinion in *Rutter* was not joined in by a majority of the justices and therefore is not binding precedent. See *Rutter, Id.*, 496 Pa. at 617, n. 2, 437 A.2d 1211, n. 2.

█ In this case it is not necessary for us to decide which of the analyses of the doctrine of assumption of the risk is the one to be followed in Pennsylvania. Furthermore, it is not necessary for us to explore the extent and impact of a particular analysis. Such determinations are the prerogative of the Supreme Court of Pennsylvania. Rather, we are compelled to follow the Supreme Court's decision in *Carrender* in factual situations of the same class, which we find the present case to be. Where the Supreme Court has spoken on a particular subject, it is our obligation, as an intermediate appellate court, to follow and apply that decision so as to establish some measure of predictability and stability in our case law. In the absence of a legally relevant distinction between the facts of a previous case and the case before us, we are obliged to follow the dictates of the Supreme Court's decision in the prior case. Resolving cases by attempting to create irrelevant, factual distinctions impedes application of the doctrine of *stare decisis*, the principal function of which is to imbue the judicial system with some measure of predictability and stability, and places the development of the law in a constant, uncertain state of flux such that neither practioners nor trial

judges can, with any degree of predictability, determine the proper application of the law to each new case involving similar facts that comes before them. It also is not our prerogative to apply different methods of analysis where our Supreme Court has made clear which particular analysis it believes should be applied to a particular situation. With the foregoing precepts in mind, we have reviewed the record in this case and find that there are no legally relevant factual distinctions between this case and *Carrender*. Therefore, although we would be free to apply a different analysis and obtain a different resolution of the case immediately before us if there were no precedent for us to follow, we are compelled to follow the analytical framework established by the Supreme Court in *Carrender* and reach a similar conclusion.

In *Carrender*, the plaintiff brought an action against the owners of a parking lot and chiropractic clinic for injuries which she sustained after falling on the ice in the parking lot. The space in which the plaintiff, a patient at the chiropractic clinic, chose to park her car was on an incline and was covered with ice; other areas of the parking lot were free of ice and snow. Before getting out of her car, appellant became aware of the ice on the parking lot, and despite the fact that she wore a prosthesis consisting of an artificial lower leg and knew that because of the prosthesis, maneuvering on ice was particularly dangerous for her, she nevertheless kept her car parked on the ice, necessitating her walking across the ice. The plaintiff successfully negotiated the ice when walking from her car to the door of the clinic, but after she had returned to her car and was holding onto her car while attempting to get back into it, she slipped and fell.

A jury found the property owners to be sixty-five percent negligent and the plaintiff to be thirty-five percent negligent. The defendants filed a motion for judgment n.o.v. and a motion for new trial, but both were denied. On appeal, the Superior Court affirmed the judgment entered on the jury's verdict, and rejected the defendants' argument

that the trial court erred in refusing to charge the jury on the defense of assumption of the risk. The Supreme Court granted allowance of appeal.

The Supreme Court began its analysis of the case by stating that the controlling issue was whether the case should have proceeded to the jury on the theory that the defendants owed the plaintiff a duty. Because of the plaintiff's own testimony, the Court held that the defendants owed the plaintiff no duty to warn of the ice on the parking lot. The Court then discussed the duty owed by a possessor of land to an invitee, and concluded that because there was uncontradicted evidence that the ice was both obvious and known, the defendants could have reasonably expected that the ice would have been avoided, and therefore they owed no duty to the plaintiff.

After resolving the ultimate question of whether any duty was owed to the plaintiff, the Court discussed the issue raised by appellee concerning the appropriate theoretical analysis to be applied where issues of assumption of the risk and duty of a possessor of land to invitees are involved in the same case. The Court stated that

> "the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks.... It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. *Thus to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.*" *Carrender, Id.,* 503 Pa. at 188, 469 A.2d at 125. (Emphasis added.)

The Court also discussed comparative negligence and concluded that there must be *two* negligent acts for comparative negligence to apply. Because on the facts of this case the "legal consequence of [the plaintiff's] assumption of a known and avoidable risk is that the possessor of land

is relieved of a duty of care to [her]," the Court held that contributory negligence has no effect here. *Id.*, 503 Pa. at 188–189, 469 A.2d at 125.

Comparing the facts of *Carrender* with the undisputed facts in the present case, it is apparent that the cases are factually indistinguishable. Therefore, just as the Supreme Court in *Carrender* determined that the doctrine of assumption of the risk operated as a matter of law to preclude Mrs. Carrender from recovering from the defendants for her injuries despite the jury's verdict in her favor, so too in the case before us must the doctrine of assumption of the risk apply as a matter of law necessitating the entry of a judgment n.o.v. As in *Carrender*, there are no relevant disputed issues of fact which need to be submitted to a jury.

First, the cases are in the identical procedural posture. In both cases, a trial was held and the trial court refused to charge the jury on the defense of assumption of the risk. In both cases the juries returned verdicts in favor of the injured plaintiffs, but also in both cases, the juries determined that the injured plaintiffs themselves acted negligently although to a lesser extent than the defendants. Finally, in both cases, the defendants appealed claiming that the doctrine of assumption of the risk should have been applied.

The cases are also similar inasmuch as the situations which were dangerous existed prior to the plaintiffs perceiving the risk of danger, during the plaintiffs' intentional encounter with it, and after the plaintiffs' encounter with it. In *Carrender*, the icy condition existed when the plaintiff pulled into the parking lot, and it continued to exist even after she fell. In the instant case, there is no dispute that the glass was missing from the elevator before the plaintiff stuck his head into the elevator shaft as well as after he was struck. Therefore, in both cases, the danger was not only perceptible, but did not change and could not have changed during the relevant time period. This fact is important inasmuch as the unchanging nature of the danger is a relevant factor in assessing the duty owed by the defendants to the plaintiff.

Equally important is the fact that in both cases, not only were the dangers unchanging, obvious, and known by the plaintiffs, but the plaintiffs' decisions to nevertheless accept the risk of the potential dangers were unreasonable and unnecessary. In *Carrender*, the entire parking lot was not covered with ice; rather only the small portion in which the plaintiff chose to park was covered with ice. Therefore, the plaintiff was not forced into the position of encountering the danger by walking across the ice, but rather deliberately chose that course.[1] Similarly, in the case before us, there was nothing requiring the plaintiff to poke his head into the elevator shaft to call the freight elevator. An intercom system had been installed and was operational for the purpose of calling the elevator, and the plaintiff was aware that he could have used this ordinary, non-dangerous, and reasonable method of calling the elevator. Moreover, to the extent that the plaintiff claimed that his boss instructed him in this particular instance not to use the intercom system, it nevertheless was the plaintiff's own idea physically to place his head into the elevator shaft rather than simply hollering into the shaft with his head outside the shaft. The plaintiff intentionally decided to place himself in the path of the potential danger by putting his head into the elevator shaft. Because the danger in both cases was obvious, and because there was an available alternative course of action which avoided the danger, not only was it unreasonable for the plaintiffs in both cases to accept the risk of the danger, but it was reasonable for the defendants in both cases to expect that anyone encountering the danger would have perceived

1. The Supreme Court's recent decision in *Ferencz v. Milie*, 517 Pa. —, 535 A.2d 59 (1987) is not applicable here because it is factually distinguishable. Although in *Ferencz* the Court did not hold that the plaintiff who had slipped and fallen on an icy parking lot had assumed the risk as a matter of law, the icy patch was *not* seen by the plaintiff and it was not unmistakably clear that the icy patch was obvious and should have been perceived. Thus, unlike the facts in *Carrender* and the present case, the dangerous condition in *Ferencz* was not, as a matter of law, obvious, known by the plaintiff, and deliberately encountered despite the danger. Moreover, the icy patch in *Ferencz*, unlike the dangerous condition in *Carrender* or the present case, was not avoidable: walking across the icy area was the only means of getting from the parking lot to the hospital.

the danger and would have used the means available to avoid the danger.

In both cases, the risk was accepted by the plaintiff without regard to the actions of any other person or to any other event. In *Carrender*, the plaintiff assumed the risk that she might slip and fall on the ice when she took the first step on the ice rather than move her car to an ice-free parking space. In the case before us, the plaintiff assumed the risk that he might be struck by an elevator when he placed his head into the elevator shaft. The fact that in the present case appellant was injured only after an elevator, which was undeniably beyond his control, moved within the elevator shaft, whereas in *Carrender*, the plaintiff was injured when she slipped and fell, which physical act was within her control, is not a distinguishing factor because in both cases, the risk was assumed *prior* to the occurrence of the physical act immediately resulting in the injury. At the time the risk was assumed, the defendants in each case were relieved of any duty to the plaintiffs. Thus, in *Carrender*, the plaintiff relieved the defendants of any duty to her when she initially decided to test the ice and began to walk across it. Similarly, in the instant case, the plaintiff relieved the defendants of any duty at the time he placed his head into the elevator shaft, and not only after the elevator began to move within the shaft. Therefore, the timing of the plaintiffs' assumption of the risks and the concomitant releases of the defendants' duty to the plaintiffs in both *Carrender* and the case before us now, are the same.

A final similarity between the two cases is that the duty owed by the defendants in each case was essentially the same. Although *Carrender* involves the duty of a landowner to an invitee, the duty, in the case before us, the duty owed to the plaintiff by the employer's insurance company and the company hired by the insurance company to inspect the elevator, is not substantially different. In *Carrender*, the defendants owed plaintiff a duty to warn of a condition whose danger was not known or obvious. In the instant

case, which involved the condition of the premises where the accident occurred, the duty of the entities hired to inspect the elevator which was owed to appellee, who was in essence an invitee upon the premises, was to warn of a danger which was not known or obvious. Thus although technically the defendants in the case before us are not possessors of land who owe specific duties to people on the land depending on the status of the person on the property, a similar duty of care to appellee in this case is involved.

Because *Carrender* and the instant case are factually indistinguishable, we must follow the Supreme Court's approach in *Carrender* to decide the instant case. In the case before us, as in *Carrender*, therefore, to say that the plaintiff assumed the risk of injury from putting his head through the elevator door into the elevator shaft, the danger of which was both known and avoidable, is simply another way of saying that the insurance company and elevator inspection company did not owe the plaintiff the duty of warning him that it would be dangerous to stick his head into the elevator shaft. In the instant case, as in *Carrender*, the legal consequences of the plaintiff's assumption of the risk was to relieve the defendants of any duty towards the plaintiff, and for this reason, the comparative negligence act has no effect. Likewise, as in *Carrender*, because the record fails to establish a duty owed by the defendants to the plaintiff, the motion for judgment n.o.v. should have been granted.

We emphasize that our decision today in no manner changes the state of the law in Pennsylvania with regard to the viability of the defense of assumption of the risk or the impact of the Comparative Negligence Act on that defense. As the Supreme Court stated in *Carrender*,

Whatever the effect of the adoption of a system of comparative fault on the defense of assumption of risk where that defense overlaps and coincides with contributory negligence, the adoption of such a system has no effect where, as here, the legal consequence of the invitee's assumption of a known and avoidable risk is

that the possessor of land is relieved of a duty of care to the invitee.

*Carrender, Id.,* 503 Pa. at 188–189, 469 A.2d at 125 (1983). Because we have concluded that the legal consequence of Malinder's actions are the same as those of Mrs. Carrender, here too the Comparative Negligence Act has no effect on the application of the doctrine of assumption of the risk, and assumption of the risk is still a viable defense. We are simply applying the precedent established by our Supreme Court in *Carrender,* which held that at least in circumstances similar to these, assumption of the risk is still a viable defense.

Judgment reversed, and case remanded for entry of a judgment n.o.v. in favor of Utica and against the Malinders. Jurisdiction is relinquished.

OLSZEWSKI, J., files a dissenting statement.

BECK, J., files a dissenting opinion in which WIEAND and OLSZEWSKI, JJ., join.

Dissenting statement by OLSZEWSKI, Judge:

I join in the Dissenting Opinion by Judge Beck. I write separately merely to state my belief that the assumption of the risk defense has not been abrogated in all circumstances. Today we merely question whether the defense is viable where, as here, the jury is presented with evidence regarding the plaintiff's voluntary but unreasonable conduct. Under such circumstances, I believe Judge Beck steers the wiser course. In particular, I agree with Judge Beck that the relationship between the parties was not that of landowner-invitee, and thus, that *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983) is not controlling.[1] Accordingly, based upon the reasoning of the Dissenting Opinion as well as the reasoning set forth by our colleagues on the federal bench, *see, e.g., Smith v. Seven Springs Farm, Inc.,*

1. I find it noteworthy that our Supreme Court has recently cited *Carrender* for the proposition that a landowner owes no duty to protect an invitee from an obvious and avoidable harm. *See Ferencz v. Milie,* 517 Pa. ——, ——, 535 A.2d 59 (1987).

716 F.2d 1002 (3d Cir.1983) (Aldisert, J.); *Vargus v. Pitman Manufacturing Co.*, 510 F.Supp. 116 (E.D.Pa.1981) (Weiner, J.), *aff'd,* 673 F.2d 1301 (3d Cir.1981); *Jones v. M.T.D. Products, Inc.*, 507 F.Supp. 8 (M.D.Pa.1980) (Nealon, C.J.), *aff'd,* 649 F.2d 859 (3d Cir.1981), I respectfully dissent and would affirm the judgment.

Dissenting opinion by BECK, Judge:

This case squarely presents the question of whether all categories of assumption of the risk survive after the enactment of the comparative negligence act.

Appellee Malinder was injured when he put his head through an open panel in an elevator door to call to the operator to bring the elevator down. Malinder could have used an intercom system to summon the elevator. The elevator was apparently approaching at the time and struck Malinder in the head. Malinder sued several defendants, among them Utica Insurance Company and Allied Enterprises. Utica insured Malinder's employer and its building and was required by Pennsylvania law to inspect the insured's elevators. Utica hired Allied to inspect the elevators. Malinder alleged that these inspections were negligently performed.

Allied and Utica requested a directed verdict on the ground that Malinder assumed the risk of his injuries. In the alternative, they requested a jury instruction that if plaintiff did assume the risk, he was barred from recovery. The trial court refused both requests. The record reveals that at trial, Malinder gave somewhat conflicting testimony regarding his appreciation of the risks inherent in putting his head through the panel to call the elevator. Although he testified that he had called the elevator in that manner before and did not believe it was dangerous to do so, he also testified that he knew he would be struck if the elevator was coming when he put his head through the panel. In place of the assumption of the risk charge, the trial court charged the jury on contributory negligence. The jury returned a verdict for Malinder and against Utica and Allied. The jury allocated thirty percent (30%) responsibili-

ty for Malinder's injuries to Malinder's contributory negligence.

On appeal, appellant Utica contends that the evidence concerning Malinder's conduct in tilting his head through the open panel, coupled with Malinder's own testimony suggesting his appreciation of the danger inherent in that conduct, warranted at minimum a jury charge on assumption of the risk, if not a decision that Malinder had assumed the risk as a matter of law.

I dissent from the majority's decision regarding the continuing viability of the doctrine of assumption of the risk in a case such as this where the plaintiff's conduct can be characterized as negligent and, therefore, fully evaluated by the jury in the context of comparative negligence. I find clear support for this view in the policies underlying the enactment of our Comparative Negligence Act, 42 Pa.Cons. Stat.Ann. § 7102 (1982).

Assumption of the risk as a general doctrine has come under increasing attack in recent years. Dissatisfaction with the doctrine was expressed as early as 1943 by United States Supreme Court Justice Felix Frankfurter. He recommended the elimination of the phrase "assumption of risk" from our legal lexicons and characterized the phrase as follows:

> The phrase "assumption of risk" is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to lazy repetition; and repetition soon establishes it as a legal formula, indiscriminatingly used to express different and sometimes contradictory meanings.

*Tiller v. Atlantic Coast Line R.R.*, 318 U.S. 54, 68, 63 S.Ct. 444, 452, 87 L.Ed. 610 (1943) (Frankfurter, J., concurring).

One of the major difficulties inhering in the use of the phrase and in its application to particular cases is that the phrase has been construed to have a variety of meanings. As our Supreme Court has aptly stated, the outcome of a particular case may well depend upon the sense in which

"assumption of risk" is used in measuring the rights and liabilities of the parties. *Rutter v. Northeastern Beaver City School District et al.*, 496 Pa. 590, 437 A.2d 1198 (1981) (plurality).[1]

A complete understanding of these various definitions of assumption of risk is a predicate to comprehending why the doctrine in the form that appears in this case should not survive the enactment of a system of comparative negligence.

The authors of the Restatement (Second) of Torts and the lead opinion of our Supreme Court in *Rutter* have analyzed

1. *Rutter* was a negligence action arising from injuries sustained by the plaintiff, a high school student, while engaged in football practice. Plaintiff lost his sight in one eye when a player on the opposing side accidentally struck plaintiff's eye. The trial court granted a nonsuit against plaintiff in part because the court found that plaintiff had assumed the risk of his injury. *Rutter*, 496 Pa. at 594–97, 437 A.2d at 1200–01. In a plurality opinion, the Supreme Court reversed, concluding that there was a jury question as to whether plaintiff had assumed the risk.

Justice Flaherty, author of the lead opinion, took the opportunity in *Rutter* to explore the continued viability of assumption of risk in Pennsylvania and concluded that the doctrine should be abolished in all forms except where preserved by statute, in strict liability actions and in the form of express assumption of risk. Although it is now clear that this aspect of the *Rutter* opinion received the support of only a plurality of the Court and is dicta, in my view Justice Flaherty's opinion nevertheless represents a thorough and accurate statement of the seriously flawed and unnecessary nature of this doctrine. I find highly persuasive Justice Flaherty's comments regarding the difficulties in application of the doctrine because of the unclarity of its various requirements, including how to define the risk plaintiff must be proven to have assumed and how to ascertain if plaintiff acted in a truly "voluntary manner".

I would further note that these same difficulties have led some courts to eliminate assumption of risk from their state's common law even prior to the enactment of a comparative negligence system. *See, e.g., McGrath v. American Cyanamid Co.*, 41 N.J. 272, 196 A.2d 238 (1963); *Meistrich v. Casino Area Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90 (1959).

Since Justice Flaherty's comments in *Rutter* were largely confined to the viability of assumption of risk outside of any consideration of the Comparative Negligence Act, they are not directly applicable here. However, Justice Flaherty did briefly comment on the effect of the Act on assumption of risk and concluded, as I do hereinbelow, that particularly where assumption of the risk overlaps with contributory

the doctrine of assumption of the risk as comprising four basic categories, as follows:

1. *Type 1*—Express assumption of the risk—where the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for the plaintiff's protection.

2. *Type 2*—Implied assumption of the risk—where the plaintiff has entered into some relation with the defendant which the plaintiff knows to involve the risk and is, thus, regarded as having impliedly relieved the defendant of a duty to protect plaintiff against the risk.

3. *Type 3*—Implied assumption of the risk—where the plaintiff is aware of a risk created by the defendant and proceeds or continues voluntarily to encounter it and the plaintiff's conduct in so doing is entirely reasonable in that the risk is small and/or the plaintiff proceeds with all due caution.

4. *Type 4*—Implied assumption of the risk—where the plaintiff voluntarily encounters a known risk created by the defendant's conduct but the plaintiff acts unreasonably in doing so and, therefore, is contributorily negligent.

*Rutter*, 496 Pa. at 607–08, 437 A.2d at 1206–07 [2].

The above categorization of assumption of the risk can best be understood by reference to classic negligence principles, i.e. did the defendant have a duty to the plaintiff, did

negligence, the Act clearly requires its abolition. *Rutter*, 496 Pa. at 612–15, 437 A.2d at 1209–10 n. 6.

**2.** Federal courts construing Pennsylvania law take a somewhat different view as to how many distinct categories of the doctrine exist. *See Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir.1983) (although courts refer to three forms of the doctrine, there are really only two distinct species of assumption of risk); *Pritchard v. Liggett & Myers Tobacco Co.*, 350 F.2d 479, 484 (3d Cir.1965), *cert. denied*, 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475 (1966) (Pennsylvania assumption of risk cases may be divided into two categories: "primary assumption of risk" involving voluntary exposure to obvious known danger which negates liability and "secondary assumption of risk" involving failure to exercise reasonable care for own safety which overlaps with contributory negligence).

defendant breach that duty, and was the defendant's breach the legal cause of the plaintiff's injuries?

In types 1 and 2, classic negligence analysis yields the result that defendant did not owe a duty to the plaintiff. In type 1, the plaintiff by express action relieves the defendant of his or her duty by agreeing that the defendant is not obligated to act with due care for the benefit of the plaintiff and will not be liable for the consequences to plaintiff of any negligence by defendant. Keeton, W.P., *Prosser and Keeton on Torts*, 68, at 482 (5th ed. 1984). This aspect of assumption of risk serves the useful purpose of allowing parties the freedom to bargain as to their duties vis-a-vis each other as long as no overriding public policy concerns preventing such a bargain are implicated. Such express "exculpatory" agreements have long been regarded as enforceable under Pennsylvania law, although they are strictly construed against the drafter. *See Cannon v. Bresch*, 307 Pa. 31, 160 A. 595 (1932); *Galligan v. Arovitch*, 421 Pa. 301, 219 A.2d 463 (1966). Even the staunchest opponents of assumption of risk would retain this form of the doctrine, which obviously does not implicate any comparative negligence considerations. *Rutter*, 496 Pa. at 612–13, 437 A.2d at 1209.

In type 2, the plaintiff by implied action relieves the defendant of his or her duty. The plaintiff tacitly or impliedly consents that by the terms of the relationship between him or her and the defendant, the defendant will not protect the plaintiff against certain risks. *Prosser and Keeton on Torts*, at 481. Some of the most common examples of this application of assumption of risk are the "baseball game" cases. As one author has stated, the theory underlying these cases is that:

> ... those who participate or sit as spectators at sports and amusements may be taken to assume the known risks of being hurt by roller coasters, flying baseballs [etc.].... Cardozo once summarized all this quite neatly: "The timorous may stay at home."

*Id.* at 485–86. This Court has recently recognized that although such cases had previously been analyzed as involving the defense of assumption of risk, now courts reason that persons who expose themselves to the obvious risks of sports (like baseball) cannot recover because the defendant has no duty to protect against such risks. *Bowser v. Hershey Baseball Ass'n,* 357 Pa.Super. 435, 516 A.2d 61 (1986).

Another variety of type 2 assumption of the risk was at issue in *Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120 (1983), the only assumption of the risk case decided by the Supreme Court since *Rutter* and the case that the majority finds controlling here. *Carrender* involved the duty of a possessor of land to an invitee. The plaintiff, who wore a prosthesis on one of her legs, was a patient at defendant's clinic. Plaintiff fell while reentering her car in defendant's parking lot after having visited defendant's clinic. One small portion of the lot was covered with ice. Plaintiff chose to park in a space next to the ice although other ice-free spaces were available. Plaintiff testified that she knew she might slip if she attempted to walk across the ice. *Id.,* 503 Pa. at 181–83, 469 A.2d at 121–22.

The Court reiterated the long-standing proposition that the duty of a possessor of land to an invitee does not include taking precautions against or warning of those dangers which it is reasonable for the possessor to believe will be obvious to and known by the invitee. *Id.,* 503 Pa. at 184–85, 469 A.2d at 123. As to the assumption of the risk doctrine, the Court clearly stated that in a case like *Carrender,* assumption of the risk is a counterpart to the lack of a duty on the part of the defendant. In other words, the relevance of assumption of the risk in such a case is to the duty analysis. *Id.; accord Commonwealth v. Harris,* 104 Pa.Commw. 580, 522 A.2d 184 (1987). Thus, the Court rejected the contention that in a case like *Carrender* the Comparative Negligence Statute had abrogated the assumption of the risk doctrine. Specifically, the Court said:

For fault to be apportioned under the comparative negligence statute, there must be two negligent acts: a breach of duty by the defendant to the plaintiff and a failure by the plaintiff to exercise care for his own protection. Whatever the effect of the adoption of a system of comparative fault on the defense of assumption of risk where that defense overlaps and coincides with contributory negligence, the adoption of such a system has no effect where, as here, the legal consequence of the invitee's assumption of a known and avoidable risk is that the possessor of land is relieved of a duty of care to the invitee.

*Id.*, 503 Pa. at 188–89, 469 A.2d at 125.

Thus, type 2 assumption of risk cases are cases where, "the plaintiff has entered into some relation with the defendant" and because of the special relationship between the parties, the plaintiff impliedly relieves the defendant of a duty to protect plaintiff against the risk. The *Carrender* court found that such a special relationship existed between the possessor of land and an invitee. In type 2 situations, because the defendant is impliedly relieved of a duty to protect the plaintiff against the risk, the enactment of a comparative negligence system has no effect.[3]  *See Rutter, supra; Carrender, supra.*

3. Questions of duty are fundamentally questions of policy. As the Supreme Court of California has perceptively stated:

> ... duty " 'is a shorthand statement of a conclusion rather than an aid to analysis in itself ... [it is] only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection....' " Courts, however, have invoked the concept of duty to limit generally "the otherwise potentially infinite liability which would follow every negligent act,
> ..."

*Thompson v. County of Alameda*, 27 Cal.3d 741, 749–50, 167 Cal.Rptr. 70, 76, 614 P.2d 728, 734 (1980) (citations omitted).

In the context of this policy oriented duty analysis, the relevance of the fact that the hazard that caused plaintiff's injuries was obvious and known to plaintiff is simply that in certain cases, policy considerations have led our law to limit the duty of the defendant so as not to include a duty to protect the plaintiff against such hazards. Thus, we say this defendant is not "negligent" where a plaintiff is harmed by such a hazard. He is not negligent because the plaintiff cannot make out a prima facie case of negligence against him. Whether denom-

Type 3 poses somewhat more difficult analytical problems because it is not clear whether the plaintiff has impliedly relieved the defendant of his or her duty. Resolution of that issue is necessary as a predicate in order to determine whether to proceed with the negligence analysis. If it is concluded that the defendant owed no duty to the plaintiff, then continuing with the negligence analysis is inappropriate. If, on the other hand, it is concluded that the defendant owed plaintiff a duty, then the negligence analysis is appropriate. It then requires us to determine if defendant breached that duty and if the breach was the legal cause of plaintiff's injury. In any event, type 3 hypothesizes a non-negligent plaintiff; therefore, comparative negligence principles are not applicable. Since the case before us today does not involve type 3 assumption of risk, we need not decide whether it should be retained in our law. We note, however, that this peculiar and very uncommon form of assumption of risk has come under recent attack in other jurisdictions and an excellent case can be made for its elimination from our jurisprudence. *See Blackburn v. Dorta*, 348 So.2d 287 (Fla.1977).

The facts of the instant case demonstrate that it squarely fits within type 4. Here, the plaintiff voluntarily encounters a known risk created by the defendant's conduct, and the plaintiff acts unreasonably in doing so. It is not sufficient to invoke the doctrine of assumption of the risk and thereby preclude the plaintiff from recovery without further analysis. The instant fact pattern reveals a classic comparative negligence scenario. The defendant owed a duty to plaintiff to inspect the elevators. It breached that duty and was negligent. Plaintiff was also negligent in placing his head in the elevator shaft. Added to this calculus is the fact that plaintiff may have voluntarily encountered the known risk created by the defendant's

inating this aspect of standard negligence-duty analysis as a form of assumption of risk serves any purpose is a question we leave for decision on another day. In any event, the principle that in type 2 cases, the defendant's duty does not include protecting the plaintiff against obvious and known dangers was reconfirmed in our law by the *Carrender* decision and cannot now be questioned by this Court.

conduct. Under an assumption of the risk analysis, this last fact becomes controlling and plaintiff may be barred from recovery. I suggest the proper analysis is to factor the plaintiff's conduct as an element of his own contributory negligence, and compare his negligence with that of the defendant's. The result of injecting the assumption of the risk defense bars plaintiff's recovery and harkens the return to the days of contributory negligence when a negligent act by the plaintiff barred his recovery.

In my view the majority opinion is in error because it characterizes the instant factual scenario as type 2 assumption of the risk. By doing so it avoids addressing the question of whether type 4 assumption of the risk should survive after the passage of the Comparative Negligence Act. The majority attempts to squeeze the instant case into a type 2 *Carrender* fact pattern and thereby conclude that the defendant owed no duty to the plaintiff. The majority finds a factual analogy between this case and *Carrender*. In my view the analogy is flawed and inappropriate because type 2 assumption of the risk cases require a special relationship between the plaintiff and the defendant.

In *Carrender* that special relationship derived from the fact that plaintiff was an invitee and defendant a possessor of land. In fact, the only situation addressed by the *Carrender* Court is that of a possessor of land and an invitee. There is no suggestion in the *Carrender* opinion that the Supreme Court intended its decision to extend to the scope of the duty of any other category of defendant. The *Carrender* opinion is replete with the law of possessors of land. Possessors of land and invitees have a unique and special relationship and a body of law has developed around that relationship which makes the duty of possessors of land different from that of other defendants. Thus, to extend the holding of *Carrender* to any other type of case is strained.

The instant case, on the other hand, is a clear example of an ordinary plaintiff, an employee of a third party, and an ordinary defendant, an insurance carrier. Absent the spe-

cial relationship, the duty that the defendant owes to the plaintiff falls squarely within traditional tort concepts.

Since this is in my view a case involving both a negligent plaintiff and a negligent defendant, which involves no special relationship between the parties that might affect the defendant's duty, the Comparative Negligence Act is directly implicated. In such a case as this, I would hold that assumption of the risk should be abrogated because it prevents a comparison of plaintiff's negligence to defendant's and thus frustrates the intent of a comparative negligence system. The continued viability of assumption of the risk throws this kind of case back into the contributory negligence model, which the legislature expressly rejected in enacting the Comparative Negligence Act. The plaintiff is barred from recovery if his or her conduct reveals negligent conduct in the peculiar form that overlaps with assumption of the risk. This result is clearly not in accordance with the legislative policy determinations that underlay the enactment of the Comparative Negligence Act.

Our Comparative Negligence Act established what has been called a "modified" system of comparative negligence. It is "modified" in the sense that it preserves the possibility of a complete bar to recovery based upon the negligence of the plaintiff in any case where the negligence of the plaintiff exceeds that of the defendant. 42 Pa.Cons.Stat.Ann. § 7102(a). From the face of the statute there can be no doubt that the legislature approved the elimination of the traditional notion that a slightly negligent plaintiff should be barred from recovery against a grossly negligent defendant. However, it is equally clear from the face of the statute that the legislature also approved the traditional contributory negligence concept in some cases where the plaintiff may have acted with such a lack of due care, with such a disregard for his/her own welfare, that recovery should be barred.

Although the face of the statute is silent on the precise issue presented here, a review of the policy underpinnings of contributory negligence, comparative negligence and as-

sumption of risk reveals that such a statute also logically mandates the merger of type 4 assumption of risk into comparative negligence. Contributory negligence may be either "an intentional and unreasonable exposure of himself [the plaintiff] to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or ... conduct which in [other] respects falls short of the standard to which the reasonable man should conform in order to protect himself." Restatement (Second) of Torts § 466 (1965). The complete bar previously resulting from proof of a plaintiff's contributory negligence was based upon a policy determination that a plaintiff who was at all at fault for his or her injuries because of his or her own failure to exercise due care had no legal right to recover from another who had also contributed to those injuries. Adoption of a comparative negligence scheme reflects a change in this policy. Comparative negligence regards a reduction in the plaintiff's recovery as a sufficient punishment for his or her own negligence. *Keegan v. Anchor Inns, Inc.*, 606 F.2d 35 (3d Cir.1979) (construing Virgin Islands law and concluding that the Virgin Islands comparative negligence statute, virtually identical to Pennsylvania's, abrogates assumption of risk). However, under a modified system such as ours, where the plaintiff's conduct is sufficiently egregious, i.e. more negligent than the defendant's, the total bar of contributory negligence is preserved.

On the other hand, assumption of risk in all of its forms except for type 4 and possibly for type 3 is a concept based on the consent or waiver, whether express or implied, by plaintiff of defendant's duty to protect plaintiff. This is amply demonstrated by the discussion of the types of assumption of risk above. In type 4 assumption of risk, however, the defenses of contributory negligence and assumption of risk converge. The definition of contributory negligence I have set forth above neatly illustrates this convergence of the two defenses. In this scenario, that form of contributory negligence which is an intentional and unreasonable exposure to a known danger is identical to

type 4 assumption of risk. Thus, one commentator has correctly opined:

> When a plaintiff's implied assumption of risk is unreasonable, it looks most closely like contributory negligence. The defense is therefore most amenable to "merger" into a comparative negligence system when it appears in its "unreasonable form" [i.e. type 4]. The plaintiff by hypothesis has been negligent in choosing to encounter the risk, and so many courts have held that the contributory negligence form of assumption of risk—probably the most common form in which the doctrine appears—should be absorbed into the mainstream of comparative fault....

*Prosser and Keeton on Torts*, § 68, at 497. *See also Rutter*, 496 Pa. at 613–14, 437 A.2d at 1210 n. 6 (citing, *inter alia*, *Li v. Yellow Cab*, 13 Cal.3d 804, 825, 119 Cal.Rptr. 858, 873, 532 P.2d 1226, 1241 (1975)).

In sum, logically and analytically it is clear that comparative negligence and type 4 assumption of risk are inconsistent. The fact that the Comparative Negligence Act itself does not specifically state that the defense of assumption of risk is abrogated should not prevent us from concluding that it should be abolished in light of that Act. We note that the fact that a comparative negligence statute does not specifically mention the abrogation of assumption of risk has not prevented the courts of numerous other states from deciding that comparative negligence logically and impliedly mandates the abrogation of at least type 4 assumption of risk. *See, e.g., Britain v. Booth*, 601 P.2d 532 (Wyo.1979); *Keegan v. Anchor Inns, Inc.*, 606 F.2d 35 (3d Cir.1979).

Moreover, an analysis of the context of Pennsylvania law in which the Comparative Negligence Act was enacted lends even further support for the conclusion that the Act sub silentio requires the abrogation of type 4 assumption of risk. As the Supreme Court of Wyoming has pertinently stated in the context of its decision to abrogate assumption of risk in light of that state's comparative negligence system, "all statutes are presumed to be enacted with full knowledge of the existing state of the law with reference thereto." *Britain*, 601 P.2d at 534.

In *Vargus v. Pitman Mfg. Co.*, 510 F.Supp. 116 (E.D.Pa. 1981), *aff'd on reh'g*, 675 F.2d 73 (3d Cir.1982), the District Court for the Eastern District Court of Pennsylvania assessed the impact of the Comparative Negligence Act on assumption of the risk in Pennsylvania in light of the state of the law of assumption of risk at the time of the Act's adoption. *See also Jones v. M.D. Products, Inc.*, 507 F.Supp. 8 (M.D.Pa.1980), *aff'd mem.*, 649 F.2d 859 (3d Cir.1981) (Pennsylvania comparative negligence statute eliminates that form of assumption of risk that overlaps with contributory negligence). The Third Circuit Court of Appeals has indicated its implicit approval of the district court's reasoning in *Vargus*. *Seven Springs*, 716 F.2d at 1008.

In *Vargus*, the district court noted that prior to the enactment of the Comparative Negligence Act, Pennsylvania courts had often merged assumption of the risk into contributory negligence analysis in cases where the plaintiff's actions could be construed as negligent and the two defenses, therefore, overlapped. *Vargus*, 510 F.Supp. at 118 (citing, *inter alia, Joyce v. Quinn*, 204 Pa.Super. 580, 205 A.2d 611 (1964)). More recently, this Court has noted the same blurring of the distinction between the defenses which was evident in Pennsylvania cases before the Comparative Negligence Act. *Fish v. Gosnell*, 316 Pa.Super. 565, 574–75, 463 A.2d 1042, 1047 (1983) (comparative negligence system requires a more careful application of the doctrine). In such cases, which would clearly be classified as involving type 4 assumption of risk, the courts relied on contributory negligence analysis, referring to assumption of the risk as merely a factor in that analysis and not as a separate defense. *Id.*, 316 Pa.Superior Ct. at 576–77, 463 A.2d at 1048 (citing *Kaplan v. Philadelphia Transportation Co.*, 404 Pa. 147, 171 A.2d 166 (1961); *DeFonde v. Keystone Valley Coal Co.*, 386 Pa. 433, 126 A.2d 439 (1956)).

On the other hand, the *Vargus* district court noted that Pennsylvania courts had not merged assumption of the risk into contributory negligence analysis in those cases where the doctrine actually functioned to relieve the defendant of

a duty to plaintiff. *Vargus*, 510 F.Supp. at 118. This, too, has been reconfirmed in Pennsylvania cases decided since *Vargus. See Carrender, supra; Bowser, supra.*

It was against this backdrop of the development of the common law that the legislature enacted the Comparative Negligence Act. I would conclude that given this backdrop, when the legislature abolished contributory negligence by enacting a system of comparative fault, it also implicitly abolished assumption of risk in those cases where it overlaps with contributory negligence. *See Seven Springs*, 716 F.2d at 1008 (citing *Vargus*, 510 F.Supp. at 118). These legislative intentions should not be frustrated by this court's insistence on preserving a doctrine the application of which in many cases will yield a result that would not be reached upon a pure application of the Comparative Negligence Act.

In those cases like the instant one, where the plaintiff's conduct is such as could reasonably lead a jury to conclude that the plaintiff was negligent, an instruction as to comparative negligence will suffice to present the issue of assessing plaintiff's fault to the jury. If in such a case the plaintiff's conduct was extremely careless, possibly because in fact he voluntarily acted with complete disregard for a known risk, the jury may reasonably find that plaintiff's conduct was more negligent than defendant's and may, within the requirements of our Comparative Negligence Act, bar plaintiff's recovery completely.

Indeed, as the Third Circuit Court of Appeals stated in its opinion finding that the Virgin Islands comparative negligence statute had impliedly abolished type 4 assumption of risk:

> The practical effect of limiting the definition of what constitutes "assumption of risk" may be nil. The Virgin Islands has a modified comparative negligence statute which provides that a plaintiff may not recover if his comparative fault was more than 50%. It seems plausible that negligent conduct which would have amounted to assumption of risk prior to the enactment of the comparative negligence statute, will probably now be found to

constitute negligence greater than 50%. Either way, recovery is completely barred.

*Keegan,* 606 F.2d at 41.

In this manner, our disposition of negligence cases that formerly might have involved type 4 of assumption of the risk will now comport with the legislature's determination that *fault* should be apportioned between plaintiff and defendant and that plaintiff should only be barred where his or her conduct was more negligent than defendant's.

Applying this approach to the case before us, I would conclude that the trial court was correct in refusing to instruct the jury on assumption of the risk. The trial court correctly chose to submit the issue of plaintiff's conduct in tilting his head through the open panel to the jury by means of a comparative negligence instruction. The jury's allocation of thirty percent (30%) responsibility for the accident to Malinder indicates that the jury did fully consider Malinder's conduct. Thus, I would affirm the judgment of the trial court.

WIEAND and OLSZEWSKI, JJ., join in this dissenting opinion.